**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| FRITZ GERALD TOUSSAINT,<br><br>　　　　　　　　　　Plaintiff,<br><br>　v.<br><br>ERNEST J. DRONENBURG<br><br>　　　　　　　　　　Defendant. | Case No. 23-cv-0256-BAS-WVG<br><br>**ORDER:**<br><br>**(1) GRANTING APPLICATION TO PROCEED IN FORMA PAUPERIS  (ECF No. 2)**<br><br>**(2) DISMISSING COMPLAINT WITHOUT PR PREJUDICE**<br><br>**(3) GRANTING LEAVE TO AMEND** |

Before the Court is Plaintiff Fritz Gerald Toussaint's Application to Proceed *in forma pauperis* ("IFP").[1]  (IFP App., ECF No. 2.)  While the Court finds Plaintiff qualifies for IFP status and, therefore, **GRANTS** his Application, it nevertheless concludes Plaintiff cannot proceed with his Complaint as presently alleged because it fails to state a cognizable claim.  Therefore, the Court **DISMISSES WITHOUT PREJUDICE** the Complaint under 28 U.S.C. § 1915(e)(2)(B).

---

[1] This action has been transferred to this Court from the Eastern District of New York.

## I. IFP Application

Under 28 U.S.C. § 1915, a litigant who, because of indigency, is unable to pay the required fees or security to commence a legal action may petition the court to proceed without making such payment. The determination of indigency falls within the district court's discretion. *See Cal. Men's Colony v. Rowland*, 939 F.2d 854, 858 (9th Cir. 1991) (holding that "Section 1915 typically requires the reviewing court to exercise its sound discretion in determining whether the affiant has satisfied the statute's requirement on indigency"), *rev'd on other grounds*, 506 U.S. 194 (1993).

It is well-settled that a litigant need not be completely destitute to proceed IFP. *See Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339–40 (1948). To satisfy the requirements of 28 U.S.C. § 1915(a), "an affidavit is sufficient which states that one cannot because of his poverty pay or give security for the costs . . . and still be able to provide himself and dependents with the necessities of life." *Id.* at 339 (internal quotation marks omitted); *see also United States v. McQuade*, 647 F.2d 938, 940 (9th Cir. 1981) (instructing that facts concerning the affiant's poverty must be stated "with some particularity, definiteness, and certainty"). However, "care must be employed to assure that federal funds are not squandered to underwrite, at public expense . . .[,] the remonstrances of a suitor who is financially able, in whole or in material part, to pull his own oar." *Temple v. Ellerthorpe*, 586 F. Supp. 848, 850 (D.R.I. 1984). District courts, therefore, tend to reject IFP applications where the applicant can pay the filing fee with acceptable sacrifice to other expenses. *See Skyler v. Saul*, No. 19-CV-1581-NLS, 2019 WL 4039650, at *3 (S.D. Cal. Aug. 27, 2019).

Plaintiff attests he has $167 to his name, deposited in a checking or savings account. (*See* IFP App. at 2.) He further attests he takes home $167 per month in pay or wages. (*See id.* at 1.) He has no other source of income, nor does he own any assets. (*See generally*

*id.*)  On these attestations, Plaintiff has demonstrated he qualifies for IFP status.  Therefore, the Court **GRANTS** his IFP Application.[2] (*See* ECF No. 2.)

## II.     PRE-ANSWER SCREENING

Because Plaintiff is proceeding IFP, his Complaint also requires a pre-answer screen pursuant to 28 U.S.C. § 1915(e)(2).  *See Lopez v. Smith*, 203 F.3d 1122, 1129 (9th Cir. 2000) (en banc) ("[S]ection 1915(e) applies to all *in forma pauperis* complaints, not just those filed by prisoners.").  Under this statute, the Court must dismiss a plaintiff's complaint, or any portion thereof, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune.  *See* 28 U.S.C. § 1915(e)(2)(B)(i)–(iii).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure [("Rule")] 12(b)(6) standard for failure to state a claim."  *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to Section 1915(e) "incorporates the familiar standard applied in the context of failure to state a claim under Rule 12(b)(6)").  Rule 12(b)(6) tests the legal sufficiency of the allegations underlying the claims in a complaint.  *See Navarro v. Block*, 250 F.3d 729, 731 (9th Cir. 2001).  The procedural posture at Rule 12(b)(6) requires the court to accept all factual allegations pleaded in the complaint as true and to construe those allegations, and draw all reasonable inferences therefrom, in favor of the plaintiff.  *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996).  The pleadings of *pro se* plaintiffs are afforded some degree special solicitude to account for the litigant's lack of legal training and experience.  *See Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010).  However, *pro se* litigants are not entitled to a court's assumption of facts not alleged or drawing of unwarranted inferences.  *Iqbal*, 556 U.S. at 679.

---

[2] Plaintiff is warned IFP status "may be acquired and lost during the course of litigation."  *Wilson v. Dir. of Adult Insts.*, No. CIV S-06-0791, 2009 WL 31150, at *2 (E.D. Cal. Feb. 9, 2009).

To avoid Rule 12(b)(6) dismissal, a complaint must plead sufficient factual allegations to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2008) (internal quotation marks and citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 663. Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the court to draw on its judicial experience and common sense." *Id.* at 663–64. The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed-me accusation[s]" fall short of meeting this plausibility standard. *Id.* at 678–79.

"A Rule 12(b)(6) dismissal may be based on either a 'lack of cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Johnson v. Riverside Healthcare Sys. LP*, 534 F.3d 1116, 1121 (9th Cir. 2008) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).

### B.  Analysis

The allegations in the Complaint are somewhat difficult to discern, both because Plaintiff's handwriting is at times illegible and the facts alleged are sparse and disjointed. Plaintiff brings this action under 42 U.S.C. § 1983 against Defendant Ernest J. Dronenburg ("Defendant"), the Assessor-Recorder-Clerk of the County of San Diego. (*See generally* Compl.) Plaintiff alleges he attempted to "register[] [his] Christian marriage in San Diego County on or around July 14, 2022," but that Defendant denied that registration. (*Id.* at 4.) One year after his unsuccessful attempt to register his marriage, Plaintiff brings the instant action, alleging Defendant's denial "deprive[d] [him] of religious protection" and "equal protection" under the law. (*Id.* at 4–5.) As relief, Plaintiff seeks "3 million British pounds sterling" and a declaratory judgment. (*Id.* at 6.) The Complaint warrants dismissal under Section 1915(e)(2)(B) on several grounds.

### 1. Failure to State a Claim

Although it is clear Plaintiff seeks to press constitutional claims under 42 U.S.C. § 1983 against Defendant, he does not explicitly state what kind of constitutional claim or claims he intends to make. Three possible claims stand out to this Court; the facts alleged in the Complaint do not support a single one.

#### a. First Amendment – Free Exercise Clause

The Free Exercise Clause of the First Amendment provides, "Congress shall make no law . . . prohibiting the free exercise of religion." U.S. Const. Amend. I. The Free Exercise Clause is applicable to the States under the terms of the Fourteenth Amendment. *See Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940). Under the Supreme Court's religious freedom jurisprudence, "a plaintiff may carry the burden of proving a free exercise violation in various ways." *Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407, 2421 (2022) (quoting *Emp't Div., Dep't of Human Res. of Ore. v. Smith*, 494 U.S. 872, 879–81 (1990)). One of the most common theories of a free exercise claim includes allegations "that a government entity [(1)] burdened a sincere religious practice [(2)] pursuant to a policy that is not [(a)] 'neutral' or [(b)] 'generally applicable.'" *Id.* at 2421–22; *see Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 546 (1993) (holding "law[s] burdening religious practice that [are] not neutral or not of general application" are analyzed under the rigors of strict scrutiny review).

"Government fails to act neutrally when it proceeds in a manner intolerant of religious beliefs or restricts practices because of their religions nature." *Fulton v. City of Philadelphia*, --- U.S. ---, 141 S. Ct. 1868, 1877 (2021). Neutrality encapsulates two separate but related concepts: "facial neutrality" and "operational neutrality." *Lukumi*, 508 U.S. at 533–40. A policy must be both facially and operationally neutral to avoid strict scrutiny. *Id.* A policy lacks "facial neutrality if it refers to religious practice without secular meaning discernable from the language or context." *Stormans, Inc. v. Wiesman*, 794 F.3d 1064, 1076 (9th Cir. 2015) (quoting *Lukumi*, 508 U.S. at 533). And operational neutrality is missing if, despite being facially neutral, the policy is designed in such a way

that targets "religious conduct for distinctive treatment" through its operation—not to accomplish legitimate policy objects. *Lukumi*, 508 U.S. at 534–35. "A government policy will fail the general applicability requirement if it 'prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way,' or if it provides 'a mechanism for individualized exemptions.'" *Kennedy*, 142 S. Ct. at 2422 (quoting *Fulton*, 141 S. Ct. at 1877).

The Complaint does not contain allegations that track the requisite elements of a Free Exercise claim. As an initial matter, Plaintiff's allegation Defendant declined to register his "Christian marriage" fails to inform this Court what religious freedom it is that Plaintiff seeks to vindicate. Did Defendant refuse to register the marriage of Plaintiff and his wife—who happen to both be Christian—upon request? Did Plaintiff explicitly request Defendant to register his marriage as a "Christian" one to no avail? The Court can only guess based on the scant factual allegations in the Complaint. Moreover, Plaintiff does not identify a policy pursuant to which Defendant's declination was made. He, therefore, also fails to allege facts that would enable this Court to determine whether the policy that led to Defendant's decision not to register Plaintiff's marriage was neutral or generally applicable. These are essential facts Plaintiff must plead in order to state a claim under the Free Exercise Clause and, thereby, pass muster of Section 1915(e)(2)(B)(ii).

### b. First Amendment — Establishment Clause

The Establishment Clause of the First Amendment proscribes any law "respecting an establishment of religion." U.S. Const. Amend. I. "The clearest command of the Establishment Clause is that one religious denomination cannot be officially preferred over another." *Larson v. Valente*, 456 U.S. 228, 244 (1982); *accord Freedom of Religion Found., Inc. v. City of Warren*, 707 F.3d 686, 691 (6th Cir. 2013) ("[T]he Clause prohibits government from favoring one religion over another or from favoring religion over irreligion (or irreligion over religion)."). Plausible allegations of a denominational preference triggers strict scrutiny review. *See id.*; *see also Hernandez v. Comm'r of Internal Revenue*, 490 U.S. 680, 695 (1989).

The Complaint does not provide sufficient factual foundation for an Establishment Clause claim. While Plaintiff alleges, in essence, that Defendant did not perform the governmental services he had performed for other similarly situated marriage applicants (Compl. at 5), the Complaint stops short of alleging Defendant exhibited a preference of one religion over another or any other form of favoritism.

### c. Fourteenth Amendment — Equal Protection

The Equal Protection Clause of the Fourteenth Amendment requires that persons who are similarly situated be treated alike. *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). An Equal Protection claim may be established in one of two ways: (1) intentional discrimination based upon a plaintiff's membership in a protected class or (2) unequal treatment of a member of a non-suspect group for arbitrary reasons or without legitimate purpose. *See, e.g., Lee v. City of L.A.*, 250 F.3d 668, 686 (9th Cir. 2001); *Thornton v. City of St. Helens*, 425 F.3d 1158, 1167 (9th Cir. 2005); *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). Only the first theory is relevant here.

To state an Equal Protection claim under a theory of intentional discrimination, the plaintiff must allege (1) that he is a member of a protected class and (2) the defendant intentionally discriminated against him on that basis. *See, e.g., Thornton v. City of St. Helens*, 425 F.3d 1158, 1167 (9th Cir. 2005). Plaintiff's allegations concerning his Christian faith suffice to show his membership in a protected class. *See, e.g., Maner v. Dignity Health*, 9 F. 4th 1114, 1123 (9th Cir. 2021) ("The only common denominator among 'race, color, *religion*, sex, or national origin' is that each refers to a characteristic that signals membership in a protected class.") (emphasis added). But the Complaint fails to illustrate that Defendant discriminated against Plaintiff—by failing to register his marriage on the County of San Diego's records—on the basis of Plaintiff's Christian faith. Indeed, all the Complaint alleges is that Defendant denied registration of Plaintiff's marriage. This fact does not permit the plausible inference that Defendant's denial is rooted in religious animus, rather than based upon one of the many other unrelated, permissible reasons a recorder might find a marriage application deficient.

Because the Court finds Plaintiff fails to allege facts that fit within any of the potentially apposite constitutional claims under 42 U.S.C. § 1983, it concludes dismissal of the Complaint at the pre-answer screening stage is warranted for failure to state a claim pursuant to Section 1915(e)(2)(B)(ii).[3]

### 2. Frivolity

Section 1915(e)(2)(B)(i) authorizes a district court to *sua sponte* dismiss frivolous claims. "[T]he amount sought in an *in forma pauperis* suit is a permissible factor to consider when making a frivolity determination." *Nagy v. FMC Butner*, 376 F.3d 252, 253 (4th Cir. 2004); *see, e.g.*, *Weaver v. Cal. Corr. Inst. Confinement Shu*, No. CV F 06-441 OWW SMS P, 2006 WL 1438750, at *1 (E.D. Cal. May 23, 2006) (finding IFP prisoner's request for $6 million in damages to be frivolous); *Dugan v. Kanamu*, Civ. No. 07-00226 JMS-KSC, 2007 WL 1720104, at *3 (D. Haw. June 8, 2007) (finding plaintiff's claim he is entitled to $5 million for alleged false arrest "seemed excessive" and bore upon the frivolity analysis under Section 1915(e)(2)(B)(i)); *Stennis v. Bank*, No. 20-20597-CIV-

---

[3] Beyond failing to state a claim, Plaintiff's suit may also be barred by the Eleventh Amendment to the extent it seeks monetary damages. *See* 28 U.S.C. § 1915(e)(2)(B)(iii) (authorizing *sua sponte* dismissal of an IFP complaint that "seeks monetary relief against a defendant who is immune from such relief"). The Eleventh Amendment bars actions against state officers sued in their official capacities for past alleged misconduct . . . where the nature of the relief sought is retroactive, *i.e.*, money damages." *Bair v. Krug*, 853 F.2d 672, 675 (9th Cir. 1983); *but see Wallace v. Chappell*, 637 F.2d 1345, 1346 n.1 (9th Cir. 1981) (observing "a plaintiff suing a government officer will often claim that the officer acted as an 'individual'" when he or she deprived the plaintiff's rights, and did so while acting "'ultra vires' or beyond the scope" of the defendant officer's authority). Ordinarily, the Eleventh Amendment does not afford protection to county officials like Defendant. *See Ray v. Cnty. of Los Angeles*, 935 F.3d 703, 710 (9th Cir. 2019). But the Ninth Circuit has recognized instances in which county officials do enjoy a limited form of Eleventh Amendment immunity: when the county official "acts as a discretion-less instrument of the State." *Buffin v. California*, 23 F.4th 951, 966 (9th Cir. 2022). Thus, when a county official is being sued for carrying out his or her obligations mandated by state law—duties county officials have no discretion to disregard or deviate from—the Eleventh Amendment may apply. *See Mecinas v. Hobbs*, 30 F.4th 890, 903–04 (9th Cir. 2022).

The Complaint does not identify on what basis Defendant denied Plaintiff's marriage registration. The Court can only speculate whether Defendant merely followed State law or policy in denying Plaintiff's registration request, or whether his declination was a discretionary exercise of his county duties and functions. Therefore, the Court cannot yet determine whether Defendant enjoys Eleventh Amendment immunity.

MARTINEZ/AOR, 2020 WL 9549526, at *2 (S.D. Fla. May 27, 2020) (finding prayer for relief seeking $3 trillion to be frivolous).

In addition to declaratory relief, Plaintiff seeks a staggering sum of money, to be paid to him in a foreign currency. (Compl. at 5 (seeking £3 trillion).) While the Court is not bound by Plaintiff's damages allegations, the amount of damages he seeks to recover, and the form in which he seeks to recover it, clearly is baseless. And when measured against Defendant's conduct alleged, that amount bears the indicia of frivolity. *See, e.g.*, *Banks v. Soo Song*, Civil Action No. 6:17-cv-02017-RBH, 2017 WL 4410247, at *2 (D.S.C. Oct. 4, 2017) (finding damages request for $85 million to be "clearly baseless and subject to dismissal as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(1)"). Accordingly, the frivolity of Plaintiff's request for damages is an independent basis for dismissal under Section 1915(e)(2)(B)(i).

### III. CONCLUSION

For the reasons stated above, the Court **GRANTS** Plaintiff's IFP Application. (ECF No. 2.) Nevertheless, it **DISMISSES** the Complaint under Section 1915(e)(2)(B) for failure to state a claim and frivolity. (ECF No. 1.) That dismissal is **WITHOUT PREJUDICE**. If Plaintiff seeks to maintain this action, he must file an amended Complaint that seeks to correct the above-referenced deficiencies **by no later than July 28, 2023**. The amended complaint should be entitled, "First Amended Complaint" and contain S.D. Cal. Civil Case No. 23-cv-0256-BAS-WVG in its caption. Plaintiff is warned that failure to timely file a First Amended Complaint, or seek an extension of time to do so, will result in dismissal of this action.

**IT IS SO ORDERED.**

**DATED: June 30, 2023**

Hon. Cynthia Bashant
United States District Judge